[No. D010060. Fourth Dist., Div. One. Sept. 21, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT PAUL BRUECKNER, Defendant and Appellant.

COUNSEL

William K. Mueller, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle B. Davis and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TODD, J.**—Robert Paul Brueckner appeals his conviction after pleading guilty to possession of a controlled substance for sale. (Health & Saf. Code,

§ 11378.) Brueckner contends the court should have granted his motion to suppress evidence (Pen. Code,[1] § 1538.5) because (1) the citizen informant's statements were unreliable, (2) the officer lacked probable cause to detain him, and (3) the vehicle search was improper. We affirm.

FACTS[2]

At 12:30 a.m. on April 13, 1988, Escondido Police Officer Martin Silva stopped a Chevrolet driven by Mark Seiferth. Intending to cite Seiferth for the Chevrolet's tinted windows and missing front license plate, Officer Silva realized the Chevrolet had an Arizona license plate and decided against the citation.

Seiferth told Officer Silva he had just seen two men in a black Jaguar who "looked like they were doing lines," parked in an unlit area behind Heston's 24-hour market in Escondido. The driver had his head down and the passenger "scann[ed] the area in order to make sure that nobody was going to come up on to them and notice what they were doing." Seiferth did not see the drugs. Seiferth testified he shared the information with Officer Silva to avoid receiving a traffic citation and because "it was his job to know what I had seen, and if I was in his position, I would want people to let me know the same thing."

Calling for a backup, Officer Silva drove to the market, illuminated the Jaguar with a spotlight and parked next to it. On contacting Brueckner, the driver, Officer Silva recognized Francis Conlin in the passenger seat. He knew Conlin had been arrested a week and a half before for possessing both a controlled substance and a dangerous weapon.

For his safety, Officer Silva had the men put their hands on the dashboard. In Brueckner's left shirt pocket, Officer Silva saw a "stack or wad of bills . . . so big that [Brueckner's] pocket was wide open and [Silva] could see the money in plain view from where [he] was standing." Officer Silva told the men to step out of the Jaguar because he "[knew] drugs and money and weapons to be involved all together."

Officer Silva asked Brueckner if he could search the Jaguar. Brueckner said, "No," he "minded." Upon opening the driver's door, the officer saw an open brown paper bag on the floor, picked it up and found a baggie containing 112.6 grams of methamphetamine. In the passenger seat, he found a hypodermic syringe.

---

[1] All statutory references are to the Penal Code unless otherwise specified.
[2] The facts are taken from the reporter's transcript of the preliminary hearing.

DISCUSSION

I

 Brueckner contends Seiferth was unreliable as a citizen informant because Seiferth divulged the drug use information to avoid receiving a citation. He argues such an "ulterior motive" negates Seiferth's credibility and renders the "tip" unreliable to support probable cause.

 Probable cause based on an informant's tip is evaluated under a "totality-of-the-circumstances" test. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 230 [76 L.Ed.2d 527, 543, 103 S.Ct. 2317]; *People* v. *Medina* (1985) 165 Cal.App.3d 11, 17 [211 Cal.Rptr. 216].) Where an "unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—. . . rigorous scrutiny of the basis of his knowledge [is] unnecessary. [Citation.] Conversely, even if . . . some doubt [exists] as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." (462 U.S. at pp. 233-234 [76 L.Ed.2d at p. 545].)

Private citizens who are witnesses to a criminal act, absent some circumstances casting doubt upon their information, are considered reliable. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].) Neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities. (*Ibid.*)

 Here, Seiferth gave the "tip" for both "good citizenship" and "diversionary" motives. He believed he had seen drug activity and parenthetically hoped to divert the officer's attention. The fact Seiferth had an uncommunicated desire to avoid a citation is not a circumstance to cast doubt upon the information provided. The officer was unaware of Seiferth's desire, other than the general desire of any driver stopped for a citation. The officer had no intention of citing Seiferth once he became aware of the Chevrolet's out-of-state registration. We reject Brueckner's inference a quid pro quo transpired to make Seiferth's information unreliable. Although limited, Seiferth gave detailed and firsthand information.

Further, the officer knew Seiferth's identity, unlike an anonymous informant.[3] Reliability is indicated where the informer's identity is known to

---

[3] We note the United States Supreme Court recently concluded an *anonymous* tip, corroborated by independent police work, could exhibit "sufficient 'indicia of reliability' " to justify

the police, as the informer exposes himself or herself to potential liability for malicious prosecution or false reporting. (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 233-234 [76 L.Ed.2d at pp. 545-546]; *People* v. *Lombera* (1989) 210 Cal.App.3d 29, 32 [257 Cal.Rptr. 222].) We conclude Seiferth acted as a reliable citizen informant.

## II

Brueckner contends Officer Silva unlawfully detained him. He argues the officer had no articulable facts to order him to place his hands on the dashboard or to order him from the car. We disagree.

Three different categories of police interactions with individuals exist, ranging from the least to the most intrusive: the consensual encounter, which results in no restraint on liberty and for which the police officer needs no objective justification; the detention, a seizure strictly limited in duration, scope and purpose justified by the officer's articulable suspicion the individual has committed or is about to commit a crime; and arrest, the most intrusive contact, for which the officer must have probable cause. (*Florida* v. *Royer* (1983) 460 U.S. 491, 497-500 [75 L.Ed.2d 229, 235-238, 103 S.Ct. 1319]; *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].) An encounter becomes a detention when a reasonable person would believe he or she is not free to leave. (*Wilson* v. *Superior Court, supra,* 34 Cal.3d at pp. 789-790.) Such a belief may result from physical restraint, unequivocal verbal commands, or if the officer's conduct or words are clearly related to the investigation of specific criminal acts. (*Id.* at p. 791, fn. 11.)

Brueckner erroneously assumes the only articulable suspicion held by Officer Silva stemmed from Seiferth's "tip." The "tip" set the officer's investigation in motion and is only one of the facts justifying the detention. Officer Silva proceeded to the market, observed the Jaguar as described and contacted the occupants. The fact he shined his spotlight on the vehicle as he parked in the unlit area would not, by itself, lead a reasonable person to conclude he or she was not free to leave.

Only after Officer Silva recognized Conlin and commanded the occupants to place their hands on the dashboard did a detention occur. As Brueckner placed his hands, the big "stack or wad of bills" came into the officer's view. At that point, the officer had a host of facts, taken together, to reasonably

---

an investigatory stop. (*Alabama* v. *White* (1990) 496 U.S. __, __ [110 L.Ed.2d 301, 307-308, 110 S.Ct. 2412, 2415].) The *known* identity of the informant here, coupled with police work corroborating the tip, can only indicate an increased reliability in support of reasonable suspicion to detain.

suspect criminal activity. (*United States* v. *Sokolow* (1989) 490 U.S. 1, 11 [104 L.Ed.2d 1, 12-13, 109 S.Ct. 1581, 1587]; *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1190, fn. 2 [265 Cal.Rptr. 507].) The officer observed a person, recently arrested for drug and weapon possession, in an automobile behind a 24-hour market after midnight. His companion carried a big "stack or wad of bills" and a citizen reported seeing drug use. We conclude the officer justifiably detained Brueckner.

## III

■ Finally, Brueckner argues the officers improperly searched the Jaguar. The search of a vehicle passenger compartment, limited to those areas where a weapon may be placed or hidden, is permissible if the officer possesses a reasonable belief the suspect is dangerous and may gain immediate control of weapons. (*Michigan* v. *Long* (1983) 463 U.S. 1032, 1049 [77 L.Ed.2d 1201, 1219-1220, 103 S.Ct. 3469]; *People* v. *King* (1989) 216 Cal.App.3d 1237, 1239 [265 Cal.Rptr. 370].) "[The] issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868].) If, while conducting a search of the vehicle interior the officer discovers contraband, he or she is not required to ignore the contraband and the Fourth Amendment does not require its suppression. (*Michigan* v. *Long, supra*, 463 U.S. at p. 1050 [77 L.Ed.2d at p. 1220].)

Here Officer Silva encountered two men in a car parked in a dark area behind a 24-hour market. Upon recognizing Conlin as a recent arrestee for possession of drugs and a dangerous weapon Officer Silva became alarmed for his safety. Under the circumstances, his alarm was reasonable to justify a *Terry* search of the passenger compartment. (*Terry* v. *Ohio, supra*, 392 U.S. 1.)

### DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Benke, J., concurred.