Filed 7/17/13  P. v. Martinez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054066 |
| v. | (Super.Ct.No. RIF148701) |
| GERARDO MARTINEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge. Affirmed.

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION[1]

A jury convicted defendant Gerardo Martinez of the first degree murder of his

uncle, David Martinez. (§ 187, subd. (a).) The jury found that defendant had not

personally or intentionally discharged a firearm, causing great bodily injury or death,

within the meaning of sections 1192.7, subdivision (c)(8), and 12022.53, subdivision (d).

The court sentenced defendant to a prison term of 25 years to life for the murder.

On appeal, defendant challenges the validity of a search warrant and the

sufficiency of evidence on the questions of identity and the commission of murder. He

also asserts there was instructional error. We reject defendant's contentions and affirm

the judgment.

II

FACTUAL BACKGROUND

*A. David's Death*

David, the victim, was the uncle of defendant and his brother, Andres (Andy)

Martinez. David and defendant both lived at the same address on Spruce Street in

Riverside.[2] Defendant was married to Elena. Andy was married to Brenda but they

divorced before the trial in 2011.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Defendant occupied the main house and David lived in the back.

2

Before his death, David was in custody in the Riverside County jail between June 14 and July 1, 2008. Andy was in the Riverside County jail between March and September 2008. On June 23, 2008, Brenda, Andy, and defendant had a three-way telephone conversation that was recorded. Andy and defendant discussed how fellow inmates had complained about David because he had been taking money from inmates and he had been violating inmate protocol by mixing with other races. Andy instructed defendant to inform David that he should apologize for his behavior.

In a subsequent telephone call between Andy and defendant on June 28, 2008, Andy reported that some problems were being fixed but David had "screwed up." David needed to make amends because the East Side Riva Street gang members–the "E"–were still angry.

After David's release from jail, on the afternoon of July 17, 2008, two men, in a truck matching the description of defendant's truck, drove David to the impound yard to retrieve a Lincoln Continental. Because David lacked the necessary impound release paperwork, he was not allowed to take the car.

Later, at nearly midnight on July 17, 2008, a Union Pacific conductor spotted David's lifeless body sprawled across the railroad tracks in Grand Terrace in front of a westbound train. The train struck the corpse and threw it some distance. After the engineer stopped the train, the conductor guided the sheriff's detectives to the location of the body.

The detectives found a trail of blood leading from a nearby embankment to the tracks. A contact gunshot wound between the victim's eyes indicated he had been killed instantly by a gunshot to the forehead, not from being hit by the train.

B. *Post-Homicide Investigation*

1. *The Pick-Up Truck*

Detectives secured a search warrant and searched defendant's Spruce Street residence on July 19, 2008. Defendant's pickup truck was parked in front and had been recently washed and vacuumed. The truck had new tires that had been purchased and installed on July 18 to replace tires that had been installed only a month before.

Two drops of blood were visible in the truck bed. The truck was sprayed with Bluestar, a substance which detects blood. Blood appeared to be visible in three places on the truck–the top of the tailgate, the bedliner, and the bed. One of the areas tested positive for David's DNA.

2. *The Note and Gun Paraphernalia*

During the search of defendant's home, a sheet of paper was found with the following misspelled handwritten notations:

"Do u think blood is all out of body?

 "Need Long Sleeve Shirts

"be care Ful hair dont Fall all hears body Face

" change tire's on truck Yes

"alternate route?

"rap with plastic?

4

"Look-outs?

"But that's kind of laet to move It!

"Should I Dig a Hole or use the Saw Saw? and mesey.  [*Sic*]"

The sheet of paper bore defendant's palm print, in addition to others.

Detectives also found .45- and .22-caliber ammunition, an empty shoulder holster, and an empty pistol holster.  The bullet that killed the victim was either .40-caliber or 10 millimeter.

## 3. *July 19 Telephone Call Between Andy and Brenda*

At 5:32 p.m. on July 19, 2008, Andy and Brenda had another recorded telephone conversation in which they commented about David's death and defendant's arrest. Brenda said defendant had asked her what Andy wanted for his birthday.  Defendant told Brenda he had already gotten Andy a birthday present:  "I took his last breath[]." Defendant told Brenda to tell Andy, "That's your birthday present and you hated him . . . ."  "You got your birthday present.  That's what you always wanted and you hated him." Brenda replied to defendant, "that's funny because I thought they [Andy and David] got along."  Andy responded to Brenda, "I don't hate him."  Andy said the reference to the birthday present was about money.  In her testimony at trial, Brenda denied that defendant's statements meant that he had killed David.

## III

## SUFFICIENCY OF EVIDENCE

Defendant argues there is insufficient evidence to establish him as the killer. Defendant also disputes there is sufficient evidence to support a conviction for first

5

degree murder.  (*People v. Howard* (1930) 211 Cal. 322, 329.)  Based on a deferential review of the record in the light most favorable to the judgment, we conclude there is ample evidence on these points.  (*People v. Young* (2005) 34 Cal.4th 1149, 1180; *People v. Maury* (2003) 30 Cal.4th 342, 396.)

David died from a gunshot wound to the forehead, a premeditated deliberate killing.  (*People v. Halvorsen* (2007) 42 Cal.4th 379, 421-422.)  David's death was preceded by two telephone calls between Andy and defendant in which they discussed David's misbehavior in jail and the need for him to apologize to avoid gang repercussions.  On the day of David's death, he was seen in defendant's company during the trip to collect his car at the impound yard.  Defendant's truck's tires had been replaced for no apparent reason.  The truck showed signs of having been cleaned to destroy evidence.  Nevertheless, a trace of David's blood was found on the truck.  David's body was dumped on the railroad tracks.  The physical evidence strongly implicated defendant and demonstrated consciousness of guilt.  (CALCRIM No. 371.)  Additionally, the checklist of "to do" items plausibly suggested a plan to commit murder and bore defendant's palm print.  Defendant had access to and used firearms.  In the telephone call between Brenda and Andy, it was certainly reasonable for the jury to interpret her conversation as informing Andy that defendant had claimed he had killed David as a favor to Andy.

Defendant's effort to reinterpret the meaning of Brenda's statements contradicts the jury's implied findings.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Defendant's suggestion that David could have committed suicide is wildly speculative.  Although

defendant tries to posit alternative innocent explanations for the incriminating evidence against him, the evidence as a whole fully supports the jury's conclusion: "'"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]"' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) We conclude sufficient evidence allowed a reasonable jury to conclude that defendant killed his Uncle David.

IV

INSTRUCTIONAL ERROR

Defendant offers a multi-faceted series of arguments relating to purported instructional error, all of which derive from the absence of direct evidence implicating defendant in David's murder and from the jury's seemingly inconsistent verdict that defendant murdered David while also finding that defendant did not use a gun.

A. *Trial Court's Inquiry About the Jury's Understanding of Its Instructions*

The jury was instructed, based on CALCRIM No. 520, that murder required the jury to find that defendant committed an act that caused another person's death as a direct, natural, and probable consequence. Additionally, the personal use of a firearm required the jury to find defendant personally and intentionally discharged a firearm

7

causing death. (CALCRIM No. 3149.) The court denied the prosecutor's request for an instruction on aiding and abetting.

The prosecutor argued that defendant killed David execution-style, shooting him in the head. Defense counsel argued that it was not proved beyond a reasonable doubt that defendant had pulled the trigger and that, although defendant may have been involved in concealing the crime, someone else shot David. The prosecution countered that the defense scenario was implausible and defendant had bragged about the killing to Brenda.

During deliberations, the jury asked for the transcripts of Brenda's telephone conversations and of her trial testimony. The jury also asked for clarification about whether defendant could be found guilty if he did not "pull the trigger" but was part of the crime. After defendant's courtroom appearance was waived, the court and counsel discussed the jury's question at some length and agreed the court should tell the jury that it first had to find defendant had caused David's death and was guilty of murder before deciding the firearm allegation.

Later the same day, the jury asked for an additional explanation about the meaning of "cause": "*Please clarify the word 'Cause' does it include before the act or is it limited to the act itself [¶] *If the defendant know [*sic*] about the act after is the [undecipherable] the cause. 'Please go in depth.'" At this point in the proceedings, another lawyer, Graham Donath, appeared for the defense trial attorney, Ryan Markson, and again waived defendant's appearance. With the agreement of the lawyers, the court wrote in response: "The defendant is guilty of murder if he alone[,] or with others[,]

8

intend to commit and do commit [*sic*] an act that causes the death of a person with malice aforethought. The intent must be formed and the act done before or during the commission of the crime. The defendant is not guilty of murder if his conduct relating to the crime of murder only occurred after the victim dies."

The jury's final question asked for an explanation of second degree murder. The court conferred with counsel by telephone and then told the jury that second degree murder was murder without premeditation and deliberation.

## B. Waiver and Ineffective Assistance of Counsel

Defendant contends "[t]he killer had to have pulled the trigger to be a direct killer, the theory with which the jurors were presented." Defendant faults the court for not questioning the jurors about the reasons for their confusion. (*People v. Beardslee* (1991) 53 Cal.3d 68, 96-98; *People v. Thompkins* (1987) 195 Cal.App.3d 244, 250.) He accuses the court of wrongly introducing the issue of aiding and abetting without proper instruction. He claims his federal and state constitutional rights of due process were violated. In the alternative, defendant argues he received ineffective assistance of counsel (IAC).

We agree with respondent that, based on this record, defendant forfeited his claims of instructional error. The court invited both lawyers to discuss in detail the instructions and the correct responses to the jury's questions. Defense counsel had no reason to believe that any objection would have been futile. Under these circumstances, in which defendant fully approved of the instructions, a claim of error is forfeited. (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1352.)

9

Furthermore, to establish a claim for IAC, a defendant must demonstrate his lawyer's performance was not objectively reasonable and there was no reasonable probability of a more favorable outcome. (*People v. Holt* (1997) 15 Cal.4th 619, 703.) As to the jury's question about defendant "pulling the trigger," the court correctly stated the law that the jury had to decide whether defendant was guilty of murder first and the firearm allegation second. (*People v. Izaguirre* (2007) 42 Cal.4th 126, 128.) Defense counsel did not have to make meritless objections. (*People v. Constancio* (1974) 42 Cal.App.3d 533, 546.)

In additional support of his IAC claim, defendant argues that the substitution of Donath for Markson during the brief conference on the jury's question about "cause" was IAC because Markson, as the trial attorney, should have been present. Furthermore, if defendant's presence had not been waived, he might have alerted Donath, the substitute lawyer, to the implications of the court's reference to defendant acting "alone, *or with others*." Additionally, defendant contends the instruction was misleading and wrong because it suggested defendant's "intent" could occur after David's death.

Defendant's courtroom appearance for the discussion of the jury's questions was not constitutionally mandated. (*People v. Kelly* (2007) 42 Cal.4th 763, 781-782.) Furthermore, defendant has not shown that Donath acted unprofessionally. The subject instruction accurately explained that defendant could have caused David's death, even if defendant acted in concert with others. The reference to acting "alone *or with others*" did not invoke a theory of aiding and abetting, requiring additional instruction. (*People v. Lopez* (1982) 131 Cal.App.3d 565, 571.) Instead, it simply acknowledged that defendant

10

may not have acted alone. Defense counsel actually proposed this possibility when he argued that someone else, other than defendant, killed David. However, defendant was convicted for his own conduct, not as an aider or abettor. (See *People v. Singleton* (1987) 196 Cal.App.3d 488, 493.) Additionally, it is certainly true, as the court said, that defendant would not be guilty for post-homicide conduct, if, for example, he moved David's body after he was killed by another person. Because Markson had no legal reason to object to this instruction, Donath may not be faulted for not doing so.

Not only does defendant fail to show unprofessional conduct but he does not show prejudice. Based on substantial evidence, the jury found that defendant committed first degree murder even if it also found he did not use a firearm. We agree this apparent inconsistency could demonstrate lenity, compromise, or mistake, which was unwarranted by the evidence. (*People v. Lewis* (2001) 25 Cal.4th 610, 656; *People v. Federico* (1981) 127 Cal.App.3d 20, 33.) The jury may have decided that defendant killed David but should not receive the enhancement. Defendant benefitted from the fact that the jury did not make a true finding on the enhancement. However, inconsistent verdicts of this type–involving a "not true" finding on a firearm enhancement and a guilty verdict on a substantive charge–are allowed to stand if otherwise supported by substantial evidence. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405-406, *Federico,* at pp. 32-33.) Defendant's IAC claim fails.

11

V

MOTION TO SUPPRESS THE SEARCH WARRANT

Jurisdiction for murder is set in the county where a body is found (§ 790, subd. (a)) or in either county when a crime is committed within 500 yards of the two counties' boundaries. (§ 782.) The search warrant was issued in San Bernardino because David's body was found in San Bernardino County and the criminal investigation was conducted by detectives in the San Bernardino County Sheriff's Department.

On appeal, defendant renews an argument–that he had apparently abandoned earlier in making his motion to suppress–that the San Bernardino court could not issue a search warrant for property in Riverside County. Defendant also argues that the informant's information did not establish probable cause for the search warrant.

*A. The Search Warrant*

After detectives notified David's brother and sister of his death, David's sister suggested contacting his nephew, defendant, who lived at 3515 Spruce Street in Riverside, about two miles from where David's body was found. David's sister-in-law directed detectives to David's girlfriend, Veronica Webb, who was in jail at the time.

Webb told detectives she and David lived in the back house and defendant and his family lived in the main house on Spruce Street. Webb said that defendant drove two vehicles—a black Chevrolet Suburban and a beige Chevrolet truck—and David and Webb drove a Lincoln Continental. All the vehicles were usually parked in the driveway. Webb had seen defendant in possession of a nine-millimeter pistol. David had said defendant also had a .38 revolver, although Webb had never seen it. Webb identified

12

defendant as a member of the North Side Riverside gang. He was a drug dealer who supplied heroin to David. David also sold drugs and performed other drug- or gang-related chores for defendant. When he was younger, David had been an East Side Riverside gang member. He was no longer active but he still associated with defendant and other gang members because of his drug habit.

Webb remembered that David had been arrested on June 14, 2008. Two days later, Webb argued with defendant and left the Spruce Street address. She was arrested on July 1, 2008. David was released from custody on July 5, 2008. She received a letter from David, dated July 7, in which he said he was homeless but he was trying to raise bail money of $1,000 for her. She surmised defendant and David must have had a dispute about drugs. She thought David would sell drugs or commit robbery to raise the bail.

When the detectives first visited the Spruce Street address on July 18, 2008, no one responded. Because Spruce Street was David's last known residence, detectives expected they might find property and information which was relevant to defendant's death. If David had been killed in a dispute with defendant and the body transported to the railroad tracks, there was reasonable cause to believe a murder may have been committed in San Bernardino. Therefore, the detectives sought a search warrant from the San Bernardino court.

After executing the search warrant on July 19, 2008, the detectives recovered documents and keys for the Lincoln, two computers, two gun holsters, drug-related materials, bloody clothing, shovels, gun-cleaning materials, .22- and .45-caliber

13

cartridges, and the handwritten checklist for murder.  The detectives also saw blood, later determined to be David's, in defendant's truck bed.

*B.  Motion to Suppress*

In the trial court, defendant made a motion to suppress evidence obtained with the search warrant for lack of probable cause.  His current argument that the San Bernardino court could not issue a search warrant for property located in Riverside county was waived because it was not properly asserted below.  (*People v. Easley* (1983) 34 Cal.3d 858, 869.)  In any case, it lacks merit because, based on probable cause, the San Bernardino court had the authority to issue a search warrant for another county.  (*People v. Fleming* (1981) 29 Cal.3d 698, 704.)

Probable cause certainly existed to issue the search warrant:  "As we stated in *People v. Terrones* (1989) 212 Cal.App.3d 139, 146:  'The standard by which a magistrate must determine whether an affidavit is sufficient to establish probable cause . . . is explained in *Illinois v. Gates* (1983) 462 U.S. 213, 238-239:  "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place."'  (Italics added.)

"Probable cause 'is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules.'  (*Illinois v. Gates* (1983) 462 U.S. 213, 232.)  It is less than proof beyond a

14

reasonable doubt (*id*. at p. 235); less than a preponderance of the evidence (*ibid*.); and less than a prima facie showing (*ibid*.).

"Probable cause is a 'particularized suspicion' (*Texas v. Brown* (1983) 460 U.S. 730, 742; it is 'facts that would lead a man of ordinary caution . . . to entertain . . . a *strong suspicion* that the object of the search is in the particular place to be searched' (*Wimberly v. Superior Court* (1976) 16 Cal.3d 557, 564; italics added); 'probable cause requires only a . . . substantial chance.' (*Illinois v. Gates, supra,* 462 U.S. at p. 243, fn. 13.)" (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1782-1783.)

The reviewing court conducts a deferential review to determine whether substantial evidence supports the magistrate's findings. (*People v. Tuadles, supra,* 7 Cal.App.4th at p. 1784.) Here two witnesses implicated defendant. The supporting evidence for the search warrant included the information that David and defendant lived at the same Spruce Street address. According to David's live-in girlfriend, both men were involved in criminal activity and associated with gangs. The men had experienced conflicts with one another and defendant owned guns. David was found dead of a gunshot wound to the forehead in San Bernardino County only two miles from the Spruce Street address in Riverside County. Defendant did not respond when the detectives first tried to contact him.

As the trial court found, the totality of circumstances provided substantial evidence of probable cause. It was reasonable for the magistrate to conclude that evidence of drug activity and firearms would be relevant to the murder and could be located in the two houses and the vehicles on the Spruce Street property.

15

We reject defendant's effort to characterize Webb as an unreliable jailhouse informant. There is no indication from the record that she offered any information in exchange for favorable treatment in her own case. She was not an informant. Instead, as David's girlfriend, she was a reliable witness or "citizen informant." (*People v. Ramey* (1976) 16 Cal.3d 263, 268-269; *People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1504.) She had lived with David at Spruce Street for many years until they both were arrested in June and July 2008. She knew defendant and the nature of his relationship with David. There was no reason to regard her information as unreliable, stale, or untrustworthy. The trial court properly denied defendant's motion to suppress the search warrant which was based on probable cause.

VI

DISPOSITION

Probable cause supported the search warrant. Sufficient evidence proved that defendant murdered his uncle in the first degree. The court did not commit instructional error in its replies to the jury's questions. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

16