Filed 11/22/22  In re E.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | |
| | D080120 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J244078) |
| v. | |
| E.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed.

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

E.V. appeals from a judgment of the juvenile court following her admission to the offense of being a minor in possession of a concealable firearm without the permission of her parents and while unaccompanied by a parent or guardian. (Pen. Code, § 29610.) E.V. challenges the juvenile court's denial of her motion to suppress evidence that the police discovered during the search of her purse after stopping a vehicle in which she was a passenger. She also contends that we should strike the juvenile court's identification of the maximum term of confinement as reflected in the minute order from the jurisdiction hearing.

We conclude that E.V.'s arguments lack merit, and we accordingly affirm the judgment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Because E.V.'s main appellate challenge involves the juvenile court's ruling on the motion to suppress, we begin with a discussion of the evidence presented at the hearing on that motion.

San Diego Police Officer Colton Hofrichter testified that on September 6, 2021, he was part of a crime suppression team patrolling the Mission Beach area, which had experienced multiple shootings and robberies. Around 6:00 p.m., Officer Hofrichter decided to conduct a traffic stop of a BMW sedan for having illegally tinted windows. Earlier in the afternoon, Officer Hofrichter ran the license plate of the BMW, which showed that the registered owner had been released on bail after being charged with robbery involving a firearm.

As he pulled behind the BMW, Officer Hofrichter activated his patrol car lights and then his siren to initiate the traffic stop. The BMW did not stop right away, but instead drove slowly for half a block before coming to a

stop.  According to Officer Hofrichter, such behavior often occurs when the occupants of a vehicle are trying to hide contraband or weapons.  Officer Hofrichter observed people moving around in the car as it slowly rolled to a stop.  As soon as the car stopped, E.V. exited the front passenger seat, holding a large purse.  Because E.V. had exited the BMW, Officer Hofrichter opened his car door even before his patrol car came to a stop.  He approached E.V. and asked her to sit back inside the BMW.  She did so and placed the purse at her feet while acting agitated.  Officer Hofrichter perceived E.V.'s behavior of exiting the car during a traffic stop to be abnormal.

In addition to E.V., there were three other occupants of the BMW. Officer Hofrichter learned that the driver did not have a driver's license.  He also determined that the two men in the back seat—one of whom owned the car—were out on bail from charges of robbery with a firearm and were subject to Fourth Amendment waivers.[1]  After learning this information, Officer Hofrichter removed all of the occupants from the BMW, put them in handcuffs, and detained them.  E.V. attempted to bring her purse with her, which Officer Hofrichter viewed as a red flag that something could be inside the purse.  He took the purse from E.V. and put it back inside the BMW, noting that it was heavy.  Officer Hofrichter believed that there were weapons in the bag, and he believed that there had been time while the BMW was coming to a stop to put items inside the purse.

---

[1]    A Fourth Amendment waiver, or " '[a] "Fourth Waiver" is a shorthand term police use to describe a person whose "reasonable expectation of privacy" under the Fourth Amendment has been either "significantly diminished" by a condition of probation [citation], or extinguished as a condition of his parole.' " (*People v. Cervantes* (2017) 11 Cal.App.5th 860, 863, fn. 2 (*Cervantes*).)  Here, it appears the Fourth Amendment waivers were imposed as a condition of bail.

Officer Hofrichter and another officer then conducted a search of the BMW to look for any contraband that might have been hidden by the individuals with Fourth Amendment waivers. In the course of the search, they found a holster in the backseat. After finding the holster, Officer Hofrichter looked inside E.V.'s purse, where he found two firearms.[2] Officer Hofrichter testified, "I searched the bag in the car that everyone had, you know, access to, and could touch and put whatever they wanted into it."

On December 10, 2021, a juvenile wardship petition charged E.V. with the following offenses: unlawful possession of a substance containing cocaine while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a)); transportation of a controlled substance, cocaine (*id*., § 11352, subd. (a)); unlawful possession of a controlled substance, cocaine, for sale (*id*., § 11351); two counts of being a minor in possession of a concealable firearm without the permission of her parents and while unaccompanied by a parent or guardian (Pen. Code, § 29610); and unlawful possession of live ammunition (*id*., § 29650).

On February 2, 2022, the juvenile court held a hearing on E.V.'s motion to suppress the evidence found in her purse. The juvenile court denied the motion to suppress, ruling as follows:

> "After reviewing and hearing the evidence in this case, along with hearing the argument of each counsel, the Court does recognize that there has to be, since there is no warrant, there had to be some type of specific and articulable fact by which Officer Hofrichter had to support any search of [E.V.'s] bag.
>
> ". . . Upon stopping, the officer had information, already, with regard to the vehicle itself, that the registered owner was out on

---

[2]  Officer Hofrichter did not testify about finding any controlled substances in the purse, but the Probation Officer's social study states that a powdery substance was found.

4

bail on firearm charges. Then detaining the passengers in the car and then discovery that the driver himself did not have a valid license, and then the officer asked all parties to exit the vehicle. Prior to exiting the vehicle, he noticed that, just before approaching the car, [E.V.] attempted to leave the vehicle with the bag. Understanding the nature of the registered owner's status with regard to his Fourth waiver and that firearm charges [*sic*], it is reasonable to conclude that Officer Hofrichter would have looked into his safety and welfare, and would have been focused on the bag, given that she was holding the bag, and then when she sat back down, placed the bag down by her feet.

"Based on the totality of the circumstances, the Court finds that it was reasonable for Officer Hofrichter, with four years of experience, had stopped the vehicle and to have suspicion that criminal activity might be in progress. [I] [w]ill also note that the vehicle itself, although it didn't have much time to stop, there was enough time for the officer to ask for additional units, given his confirmation of movement in the vehicle of passengers.

"In addition, his exiting the vehicle before it even stopped . . . that even before the patrol vehicle stopped, Officer Hofrichter was exiting to make contact and prevent one of the passengers from leaving the scene.

"And then also what's telling is that he kept the bag, concern for officer's safety, understanding the Fourth waiver and the nature of the out-on-bail of two of the passengers, and when searching the vehicle itself, found a holster in the back, and only then after finding the holster, went in and looked in the bag. For those reasons, the court does deny the motion and find that the search was valid based on the totality of the circumstances. And the motion is denied."

On February 18, 2022, E.V. admitted one count of being a minor in possession of a concealable firearm without the permission of her parents and while unaccompanied by a parent or guardian (Pen. Code, § 29610). The remainder of the charges were dismissed. At the disposition hearing on

5

March 11, 2022, the juvenile court placed E.V. on probation and released her to the custody of her mother. E.V. appeals from the judgment.

## II.

## DISCUSSION

A. *The Juvenile Court Did Not Err in Denying the Motion to Suppress*

We first consider E.V.'s contention that the juvenile court erred in denying her motion to suppress the evidence discovered when Officer Hofrichter searched her purse.

A juvenile may move to suppress evidence "as a result of an unlawful search or seizure" pursuant to Welfare and Institutions Code section 700.1. "Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards. [Citations.] A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916 (*Schmitz*).) "The burden is on the People to justify the warrantless search as reasonable." (*Id.* at p. 919.)

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings." (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.) " 'We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.) "We may affirm the ruling if it is correct on any theory, even if the trial court's reasoning was incorrect." (*People v. Hall* (2020) 57 Cal.App.5th 946, 952.)

6

The People rely on two exceptions to the warrant requirement to justify Officer Hofrichter's search of E.V.'s purse: (1) the exception that allows the search of a vehicle passenger compartment to locate weapons when officer safety is at issue (*Michigan v. Long* (1983) 463 U.S. 1032, 1049 (*Long*)); and (2) the exception that applies when a fellow occupant of a vehicle is subject to a Fourth Amendment waiver and could have hidden items in the area searched (*Cervantes, supra,* 11 Cal.App.5th 860, 871). We consider each in turn.

1. *Search for Weapons Based on Officer Safety Concerns*

"The search of a vehicle passenger compartment, limited to those areas where a weapon may be placed or hidden, is permissible if the officer possesses a reasonable belief the suspect is dangerous and may gain immediate control of weapons. ([*Long, supra,*] 463 U.S. 1032 [at p.] 1049; *People v. King* (1989) 216 Cal.App.3d 1237, 1239.) '[The] issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger.' (*Terry v. Ohio* (1968) 392 U.S. 1, 27.) If, while conducting a search of the vehicle interior the officer discovers contraband, he or she is not required to ignore the contraband and the Fourth Amendment does not require its suppression. ([*Long*], 463 U.S. at p. 1050.)" (*People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1506 (*Brueckner*).)

In the course of briefing and arguing the motion to suppress, the parties did not discuss the officer safety exception set forth in *Long, supra,* 463 U.S. 1032.[3] However, the juvenile court's comments when ruling on the

_____

[3] The People argued in opposition to the motion to suppress that the search was permissible, under the circumstances, based on the Fourth Amendment waivers of the other passengers in the BMW. At the hearing on

7

motion to suppress shows that it did consider and rely upon that exception, among others, in denying the motion.[4]

E.V. argues that because the People did not identify the officer safety exception set forth in *Long*, *supra*, 463 U.S. 1032, when opposing the motion to suppress, they may not rely on that exception in this appeal. "Although it is a settled principle of appellate review that a correct decision of the trial court will be affirmed even if based on erroneous reasons, the Supreme Court has cautioned that 'appellate courts should not consider a Fourth Amendment theory for the first time on appeal when "the People's new theory was not supported by the record made at the first hearing and would have necessitated the taking of considerably more evidence . . ." or when "the defendant had no notice of the new theory and thus no opportunity to present evidence in opposition." ' (*Robey v. Superior Court* [(2018) 56 Cal.4th 1218,] 1242.) However, when 'the record fully establishes another basis for affirming the trial court's ruling and there does not appear to be any further evidence that could have been introduced to defeat the theory,' a ruling

the motion, the People addressed the issue of officer safety only once, when attempting to distinguish a case on which defense counsel relied (*People v. Baker* (2008) 164 Cal.App.4th 1152 (*Baker*)), arguing that "this case goes well beyond the facts in *Baker* where there was no evidence at all of any criminal endeavors *or any concern for officer's safety*." (Italics added.)

4       Two statements made during the juvenile court's ruling pertain to officer safety:  First, as the juvenile court explained, "Understanding the nature of the registered owner's status with regard to his Fourth waiver and that firearm charges [*sic*], it is reasonable to conclude that Officer Hofrichter would have looked into his safety and welfare, and would have been focused on the bag . . . ."  Next, the juvenile court stated, "And then also what's telling is that he kept the bag, concern for officer's safety, understanding the Fourth waiver and the nature of the out-on-bail of two of the passengers, and when searching the vehicle itself, found a holster in the back, and only then after finding the holster, went in and looked in the bag."

denying a motion to suppress will be upheld on appeal." (*People v. Johnson* (2018) 21 Cal.App.5th 1026, 1032.)

During Officer Hofrichter's testimony, both defense counsel and the prosecutor thoroughly explored the circumstances under which Officer Hofrichter decided to conduct a search of E.V.'s purse, including that he believed it contained weapons. Moreover, in the juvenile court's view, the evidence was sufficiently developed on the issue of officer safety, as it based its ruling on that exception, at least in part. (Cf. *People v. Holiman* (2022) 76 Cal.App.5th 825, 833-834 [in deciding that the People could not attempt to justify a traffic stop based on a ground asserted for the first time on appeal because the record may not have been sufficiently developed, the court found it relevant that the trial court did not address the issue].) Although E.V. contends that she was deprived of the opportunity to cross-examine Officer Hofrichter on issues related to officer safety, she does not identify any specific lines of inquiry that were left undeveloped and does not explain what testimony could have been elicited to call into question the self-evident safety concerns that arise when an officer suspects that detained individuals may have immediate access to firearms in their vehicle when released from detention. Under those circumstances, we conclude that facts related to the officer safety exception set forth in *Long*, *supra*, 463 U.S. 1032 were sufficiently developed, and the People may therefore, on appeal, rely on that exception to justify the warrantless search.

Turning to that exception, Officer Hofrichter testified to multiple facts, which taken together, reasonably warranted a belief that the passengers in the BMW posed a danger to officers based on the possibility that they "may gain immediate control of weapons" when released back into the car. (*Long*, *supra*, 463 U.S. at p. 1049.) First, Officer Hofrichter learned that two of the

9

BMW's passengers were out on bail for robbery with a firearm. That fact could reasonably support an inference that those passengers may be the types of individuals who would use a firearm to commit violence against a police officer if they had access to a weapon upon being released back into the BMW. Second, several facts supported a reasonable inference that there might, in fact, be weapons inside the BMW. Specifically, Officer Hofrichter found an empty holster when searching the backseat area where the two other passengers were sitting. He noted that the BMW had rolled slowly to a stop while there was movement inside the car, which, from experience, he understood was often associated with efforts to hide contraband or weapons. Finally, he believed that E.V.'s two attempts to remove the purse from the BMW were suspicious, and he noted that E.V. seemed agitated. Taken together, as Officer Hofrichter expressly testified, those facts reasonably led him to believe that there were weapons inside E.V.'s purse.

E.V. suggests that concerns for officer safety did not justify the search because all of the occupants of the BMW were handcuffed while officers searched the car and thus could not have accessed any weapons. However, as the Supreme Court has made clear, the proper timeframe for the officer safety inquiry includes the period *after* a detained person is released back into a vehicle. (*Long*, *supra*, 463 U.S. at p. 1051 [noting that "the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp *before permitting him to reenter his automobile*" (italics added), and rejecting the proposition that "it was not reasonable for the officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile."].)

10

In sum, we conclude that based on the evidence presented at the suppression hearing, " 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger' " (*Brueckner, supra,* 223 Cal.App.3d at p. 1506), which justified Officer Hofrichter's search of the BMW for weapons in any place where they reasonably could have been concealed, including in E.V.'s purse.

2.   *Search Based on the Fourth Amendment Waivers of the Other Passengers*

The second relevant exception to the Fourth Amendment warrant requirement applies when a fellow occupant of an automobile, who is subject to a Fourth Amendment waiver, had the ability to exert control over an item of personal property to hide contraband.

Our Supreme Court first identified the applicable exception in the context of a person subject to a Fourth Amendment waiver because he was on parole. "[A] vehicle search based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies. Such a search is not without limits, however. The scope of the search is confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity. Within these limits, the officer need not articulate specific facts indicating that the parolee has *actually* placed property or contraband in a particular location in the passenger compartment before searching that area." (*Schmitz, supra,* 55 Cal.4th at pp. 925-926, fn. omitted.) "[A]n officer may search only those areas where he or she reasonably expects, in light of all the circumstances, that the parolee *could have* placed personal items or discarded contraband," which includes "items of personal property if the officer reasonably believes that the parolee owns the items or has the ability to exert control over them." (*Id*. at p. 930.)  A

11

decision with respect to the reasonableness of the search must ultimately be based "on the totality of the circumstances." (*Id*. at p. 929.)

In *Cervantes*, this court subsequently established that the exception identified in *Schmitz* also applies in the context of a fellow passenger who is a *probationer* subject to a Fourth Amendment waiver. (*Cervantes*, *supra*, 11 Cal.App.5th at p. 871.) We perceive no reason why the exception identified in *Schmitz* and *Cervantes* for *parolees* and *probationers* would not also apply to fellow passengers who, as in this case, are subject to Fourth Amendment waivers because they have been *released on bail*. Like parolees and probationers, persons on bail with Fourth Amendment waivers are "well aware that [their] own privacy rights are severely limited" and thus "have a heightened incentive to conceal or quickly dispose of incriminating evidence." (*Schmitz*, *supra*, 55 Cal.4th at pp. 925-926.)

Applying the exception identified in *Schmitz* and *Cervantes*, we conclude that Officer Hofrichter could reasonably conclude the backseat passengers in the BMW "*could have* placed personal items or discarded contraband" in E.V.'s purse when they became aware that police were conducting a traffic stop. (*Schmitz*, *supra*, 55 Cal.4th at p. 930.) The facts that support this reasonable conclusion are substantially the same as those we have discussed above with respect to the officer safety exception. First, as Officer Hofrichter testified, the BMW slowed to a stop and there was movement inside the car, which reasonably raised a suspicion that the occupants of the car may be trying to hide contraband or weapons. Second, the officers found an empty holster in the backseat, but no firearm. That fact could reasonably support an inference that the backseat passengers—both of whom were already charged with firearm offenses—had removed a firearm from the holster and hidden it somewhere in the BMW. Next, E.V. engaged

in behavior that made Officer Hofrichter believe that her purse was being used to hide weapons. Specifically, she exited the BMW with her purse as soon as it came to a stop, and she once again tried to take her purse with her when she was removed from the vehicle to be detained. Finally, the purse was heavy when Officer Hofrichter lifted it to place it back into the BMW. All of these facts, taken together, could lead a reasonable officer to conclude that the backseat passengers may have been given access to E.V.'s purse for the purpose of hiding weapons.

E.V. argues that it was not reasonable for Officer Hofrichter to conclude that the backseat passengers had the ability to exert control over her purse, as a woman's purse is a personal item, to which other people are not normally given access. E.V. relies on *Baker*, *supra*, 164 Cal.App.4th 1152, which, like this case, concerned the legality of a police search of a purse that belonged to a female passenger in a vehicle. *Baker* held that, under the circumstances, it was not reasonable to conclude that the driver, who was subject to a Fourth Amendment waiver, "exercised control or possession of the purse, or that the purse contained anything belonging to the driver." (*Id.* at p. 1159.) As *Baker* observed, "a purse is not generally an object for which two or more persons share common use or authority." (*Id.* at p. 1160.)

*Baker* does not control here because the facts of that case were different in significant respects. In *Baker*, after the officer stopped the vehicle for speeding, he learned the driver had a Fourth Amendment waiver, based on which he searched the entire passenger compartment, including the passenger's purse, which had been resting at the passenger's feet. (*Baker*, *supra*, 164 Cal.App.4th at p. 1156.) Unlike in this case, the facts in *Baker* did not suggest that a weapon may have been hidden while the vehicle came to a stop, and the passenger in *Baker* did not attempt to leave the vehicle with her

13

purse. (*Ibid*.) Thus, *Baker* concluded that the facts did not reasonably support an inference that the driver "exercised control or possession of the purse" for the purpose of putting contraband inside of it. (*Id*. at p. 1159.) Here, in contrast, as we have explained, there was specific evidence to support an inference that the backseat passengers could have hidden weapons inside E.V.'s purse. In fact, Officer Hofrichter reasonably explained the basis on which he *did* reach that conclusion before searching the purse.[5]

We accordingly conclude that, under the specific circumstances of this case, the warrantless search of E.V.'s purse was permissible based on the Fourth Amendment waivers of the backseat passengers in the BMW.

B.    *The Maximum Term of Confinement Noted in the Minute Order From the Jurisdiction Hearing Need Not Be Stricken*

At the February 18, 2022 jurisdiction hearing, at which E.V. admitted to committing the offense charged in count 4, the juvenile court informed E.V. that the maximum term of confinement for that offense was three years. The minute order from that hearing states: "The minor is advised the maximum term for Count 4 is 3 years. [¶] · The minor is advised the overall maximum term of confinement is 3 years." At the March 11, 2022 disposition hearing, E.V. was placed on probation and released to the custody of her mother. The

---

5    Moreover, we note that *Baker* was decided in 2008, prior to our Supreme Court's 2012 opinion in *Schmitz*. (*Baker, supra,* 164 Cal.App.4th 1152; *Schmitz, supra,* 55 Cal.4th 909.) Accordingly, *Baker* did not apply the specific inquiry set forth in *Schmitz*. Instead, it applied the rules applicable to the search of an area of a residence, over which multiple persons have common authority, when one resident is a probationer subject to a Fourth Amendment waiver. (*Baker*, at pp. 1158-1159, citing *People v. Woods* (1999) 21 Cal.4th 668.) For that reason too, *Baker* has limited applicability here. We note that *Schmitz* acknowledged and discussed *Baker*, which it distinguished based on its facts. (*Schmitz,* at p. 931.)

14

minute order from the disposition hearing makes no mention of a maximum term of confinement.

E.V. contends that the identification of the maximum term of confinement in the February 18, 2022 minute order must be stricken.

Welfare and Institutions Code section 726, subdivision (d)(1) provides, "*If the minor is removed from the physical custody of the minor's parent or guardian* as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Italics added.) Case law has disapproved the practice of stating a maximum term of confinement at a disposition hearing when the juvenile is *not* removed from parental custody, and it has required that any such language be stricken from the relevant order. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 541; *In re A.C.* (2014) 224 Cal.App.4th 590, 592.) Based on that case law, E.V. contends that because she was not removed from parental custody, the maximum term of confinement should be stricken from the February 18, 2022 minute order.[6]

We reject the argument because the statement of the maximum term of confinement in this case was made at the jurisdiction hearing, not at the disposition hearing. As the court explained in *In re P.A.* (2012)

---

[6] E.V. also contends that the juvenile court incorrectly identified the maximum term of confinement as three years rather than two years, which she contends "is likely to lead to confusion if the maximum confinement time should ever come into play." However, in the event that the maximum term of confinement ever becomes relevant for E.V., she may address the issue at that time, regardless of the juvenile court's statement at the February 18, 2022 jurisdiction hearing.

211 Cal.App.4th 23, "[W]ith respect to stating or not stating a maximum term of confinement, it is what happens at the disposition hearing that matters. By declining to make any statement [at the disposition hearing] regarding a term of confinement in conjunction with continuing Minor in his parents' custody, the court in this case acted correctly. *What the court stated at the jurisdiction hearing regarding the maximum term of confinement is of no consequence.* Accordingly, there was no error." (*Id*. at p. 32, italics added.)

Because the maximum term of confinement was identified by the juvenile court at the jurisdiction hearing, not the disposition hearing, we reject E.V.'s contention that it should be stricken from the minute order.

DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:



DO, J.



BUCHANAN, J.


16