Filed 5/18/17

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069959 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD264150) |
| JAIME E. CERVANTES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch and Joseph A. Brannagan, Judges.  Affirmed.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Genevieve Herbert, A. Natasha Cortina and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion part II.

Police validly stopped defendant Jaime Cervantes for driving with expired vehicle registration. They searched his vehicle after they learned that the adult female riding in the front passenger seat had provided them with a false identity and was subject to a felony warrant and probation search condition. Police initially discovered large quantities of illegal drugs and paraphernalia in a closed toiletries bag and an opaque plastic drawstring bag in the backseat behind the driver. They continued their search and found more methamphetamine in the front center console. They arrested defendant, who admitted to transporting drugs for sale.

Defendant moved to suppress the seized drugs and his confession on the basis the officers were unjustified in searching the bags in the backseat because the probationer on whom the police justified their search was *female*, yet the closed bags in the backseat undisputedly contained *male* toiletries and clothing. After the trial court denied the motion, defendant pleaded guilty to transporting drugs for sale. The trial court granted him probation, one of the conditions of which requires him to submit to warrantless and suspicionless searches of his electronic devices and social media accounts.

On appeal, defendant contends the trial court erred by denying his suppression motion. The contention lacks merit. The policy considerations articulated by the California Supreme Court in *People v. Schmitz* (2012) 55 Cal.4th 909 (*Schmitz*), which upheld a search of personal items in the backseat of a car based on a front seat passenger's status as a *parolee*, justify the search of defendant's center console based on his passenger's status as a *probationer*. The discovery of illegal drugs there would

2

inevitably have led to the discovery of the drugs in the bags located in the backseat. Thus, the trial court did not err in denying defendant's suppression motion.

Defendant also challenges the reasonableness and constitutionality of the electronics search condition of his probation. The challenges lack merit.

We affirm.

## FACTUAL AND PROCEDURAL SUMMARY[1]

*Defendant's October 18, 2015 Arrest*

On October 18, 2015, San Diego Police Officer Peter Larson and his partner, Officer Thomas Cooper, stopped "a four-door compact sedan" (a 2001 Toyota Corolla) for having expired registration. Defendant was driving. A female sitting in the front passenger seat identified herself to Officer Larson as Sarah Craft. After a computer-based record search returned no information for Sarah Craft, Officer Larson learned that the passenger's real name was Tiffany Craft. Records indicated she had "a felony warrant and a valid [F]ourth waiver."[2] Officer Cooper detained Craft outside of the car.

Officer Larson told defendant he was "going to search his vehicle." Defendant wanted to know why and asked to speak to a sergeant. Officer Larson called his sergeant

---

[1]    We base our summary of the facts on evidence presented at the preliminary hearing.

[2]    "A 'Fourth Waiver' is a shorthand term police use to describe a person whose 'reasonable expectation of privacy' under the Fourth Amendment has been either 'significantly diminished' by a condition of probation [citation], or extinguished as a condition of his parole." (*Cobb v. Juarez* (S.D. Cal., Feb. 11, 2013, No. 10CV1872-CAB (WMC)) 2013 WL 12108124, at *3.) The parties agree Craft was on probation.

3

to the scene. After speaking with the sergeant, defendant got out of his car. Officer Larson then searched defendant's car.

Officer Larson began by searching two bags he found on the driver's side backseat that were "within arm's reach of where the passenger was sitting." He first searched a "toiletries bag" that was zipped closed. He saw "numerous men's toiletries" (deodorant, shaving cream, and razors) and a black pouch. Officer Larson opened the pouch and found "numerous items," including "one small clear plastic bag with a crystalline material inside" that he believed was methamphetamine. He told Officer Cooper to handcuff defendant. Officer Larson continued to search the pouch and found 4.46 grams of heroin (about 80 dosage units), a digital scale, and a cigar cutter (commonly used to cut narcotics for sale).

Officer Larson then searched the other bag, which was an opaque gray plastic bag with the drawstrings drawn closed. He untied the drawstring and "immediately noticed men's boxers," "men's white tennis shoes," and "men's body wash." He continued searching the bag and found an opaque Tupperware container. Officer Larson opened the container and found 185.65 grams of methamphetamine ("well in excess of 3600 dosage units").

Craft never claimed ownership of either bag, and Officer Larson never saw her try to grab or look at them.

Officer Larson then searched the center console,[3] where he found two "orange zipper bags, and inside one was the same material which [he] believed was methamphetamine."  He also found two cell phones in the car.

After Officer Larson completed his search of defendant's car, Officer Cooper searched defendant and found a glass pipe and about $300 in cash.  The officers arrested defendant and transported him to the police station.  After being read his *Miranda* rights,[4] defendant told Officer Cooper that a man named Carlos had been paying him to transport methamphetamine once or twice per month from Los Angeles to San Diego, where "[h]e gave it to another man to sell."[5]

Defendant was released on bail.

*Defendant's October 20, 2015 Arrest*

Two days after his arrest, a patrolman stopped defendant in his car for having tinted windows.  Defendant acknowledged his recent arrest and admitted to having used drugs the day of his October 18 arrest.  A search of his car revealed 17.1 grams of methamphetamine (approximately 342 dosage units) and a glass pipe.  Defendant was arrested again.

---

[3]     The record does not indicate whether the center console was an open area or a closed compartment.  Nothing in the record indicates Officer Larson searched any areas of defendant's car that were locked or otherwise secured.

[4]     *Miranda v. Arizona* (1966) 384 U.S. 436.

[5]     A special agent with the Drug Enforcement Administration agreed that defendant's conduct in connection with his October 18 arrest was consistent with drug sales.

*Defendant's Suppression Motions*

In connection with his October 18 arrest, the People charged defendant with one count of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), with an allegation that he was transporting in excess 28.5 grams (Pen. Code,[6] § 1203.073, subd. (b)(2)); and one count of transporting heroin (Health & Saf. Code, § 11352, subd. (a)). In connection with his October 20 arrest, the People charged defendant with one count of transporting methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) The People alleged as to all counts that the drugs were not for personal use. (§ 1210, subd. (a).)

Before the preliminary hearing, defendant moved to suppress the evidence obtained and statements he made in connection with his October 18 and 20 arrests.[7] The prosecution argued the October 18 search was justified under *Schmitz, supra*, 55 Cal.4th 909, which held that "a vehicle search based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies," but "is confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity." (*Id.* at p. 926.) Defendant agreed *Schmitz* was controlling, but argued Officer Larson's search exceed the permissible scope. At the preliminary hearing, the trial court

---

[6]     Undesignated statutory references are to the Penal Code.

[7]     Defendant's appeal does not concern his October 20 search or arrest. Therefore, we discuss it only as it relates to his challenge to the electronics search condition of his probation.

6

(Hon. Frederic L. Link) found the search was "valid and legal" because "the items were within the reach of the female" who "had a Fourth waiver." The court denied the suppression motion and bound defendant over for trial.

Defendant renewed his suppression motion (§ 1538.5, subd. (i)) and moved to dismiss the case (§ 995). He again acknowledged *Schmitz* was controlling, but argued Officer Larson exceeded the permissible scope of a Fourth-waiver search because it was immediately apparent that the toiletries bag and plastic drawstring bag contained male items. The prosecution responded that the search was within the bounds of *Schmitz* because the exterior of the bags appeared gender-neutral or, in any event, because "the center console contained narcotics," was "absolutely within arm's reach of the felon passenger," and thus the "officers could have started their search there and moved to the back seat, resulting in the inevitable discovery of the methamphetamine." The trial court (Hon. Joseph P. Brannagan) found the decision made by the judge at the preliminary hearing was a close call, but not unreasonable: "So on a close call like this, I can't say that Judge Link's finding is unreasonable. I would need to find it unreasonable in order to overturn it, and I can't make that finding." The court denied defendant's motions.

### *Guilty Plea and Sentence*

Two days later, defendant pleaded guilty as charged.

Defendant told his probation officer he had been transporting drugs for Carlos for approximately one year, but said it was " 'not a daily thing.' " The probation officer reported that the street value of the methamphetamine seized in the Tupperware container on October 18 was between $111,000 and $222,000. He believed the quantity of seized

7

drugs "would potentially have had a significant impact on the community if [defendant] had completed his mission." Nevertheless, the probation officer recommended defendant be granted formal probation with 365 days of custody. He further recommended the court impose an electronics search condition.

The trial court (Hon. Michael S. Groch) followed the probation officer's recommendation and granted defendant 36 months of formal probation with 365 days in local custody. One condition of defendant's probation requires that he submit his "computers, . . . recordable media[,] electronic devices[, and] social media [accounts] to search at any time with or without a warrant, and with or without reasonable cause, when required by [a probation] or law enforcement officer." The court expressly stated during sentencing, without objection, that it was annotating the probation form to add "electronic communication devices" and "social media accounts" to the search condition.

## DISCUSSION

### I. *Suppression Motion*

Defendant argues the trial court erred in denying his suppression motion. In the trial court, defendant acknowledged the principles articulated in *Schmitz, supra*, 55 Cal.4th 909 were controlling, but argued the search of his car exceeded those principles. Now, on appeal, defendant contends *Schmitz* is "inapposite" because it involved a search based on a *parole* search clause, whereas the search of defendant's car was based on a *probation* search condition. We recognize that, in certain contexts, *Schmitz* draws distinctions between parolees and probationers. However, we find more compelling the similarities it notes in the context of a vehicle search: (1) parolees and probationers both

8

have demonstrated histories of criminal activity and share a motivation to conceal further criminal activity; and (2) drivers' already-diminished expectation of privacy in their vehicles is even further diminished when they transport a passenger, particularly one subject to warrantless and suspicionless parole or probation searches. Based on these considerations, we will apply *Schmitz*.

Doing so, we find (1) the search of defendant's center console was justified, and (2) the search of the console would inevitably have led to the discovery of the drugs in the backseat bags.

### A. *Relevant Legal Principles*

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

"We review challenges to the admissibility of evidence obtained by a police search and seizure under federal constitutional standards." (*People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11; Cal. Const., art. I, § 24.) "A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." (*Schmitz, supra*, 55 Cal.4th at p. 916; U.S. Const., 4th Amend.; *Arizona v. Gant* (2009) 556 U.S. 332, 338.) In *Schmitz*, the California Supreme Court discussed the recognized exceptions to the presumption of

9

unreasonableness that apply to searches of parolees and probationers. (*Schmitz*, at pp. 916-918.)

In *Schmitz*, police validly stopped a noncommercial five-passenger vehicle being driven by the male defendant, then searched the passenger compartment when they learned the male front seat passenger was on parole. (*Schmitz, supra*, 55 Cal.4th at pp. 914, 925.) In the backseat area, which was occupied by a woman and her small child, police found "two syringes in a chips bag, and some methamphetamine in a pair of shoes." (*Id.* at p. 914.) The defendant sought to suppress the drugs and paraphernalia, claiming the scope of a parole search of the passenger could validly extend only to the front passenger's seat and the floor in front of it. (*Id.* at pp. 914-915.) The trial court denied the suppression motion and the defendant pleaded guilty. (*Id.* at p. 914.) The defendant prevailed in the Court of Appeal, but the California Supreme Court reversed. (*Id.* at pp. 914-915.)

The Supreme Court explained that the reasonableness of a parole search is determined by "weigh[ing] the privacy interests of the parolee against society's interest in preventing and detecting recidivism." (*Schmitz, supra*, 55 Cal.4th at p. 916.) Because parolees " 'have severely diminished expectations of privacy' " in contrast to the state's " ' " 'overwhelming interest' " in supervising parolees,' " warrantless and suspicionless searches of parolees "are reasonable, so long as the parolee's status is known to the officer and the search is not arbitrary, capricious, or harassing." (*Id.* at p. 916.) But the court observed "[d]ifferent considerations are present . . . when a parole search affects the

10

privacy interests of third parties," such as "a third party driving a car with a parolee passenger." (*Id.* at p. 917.)

In determining the permissible scope of a *parole*-based search of a car and its contents, the *Schmitz* court analogized to *probation*-based searches of residences and their contents. (*Schmitz, supra*, 55 Cal.4th at pp. 917-918.) In the latter context, the court explained that because " 'probationers may validly consent in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term,' " by extension, "if others live with a probationer, the shared areas of their residence may be searched based on the probationer's consent." (*Id.* at p. 917.) However, " 'officers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over.' " (*Id.* at p. 918; see *People v. Woods* (1999) 21 Cal.4th 668, 681-682; *People v. Robles* (2000) 23 Cal.4th 789, 798 (*Robles*).)

But the *Schmitz* court found the probation/consent-based rationale for third-party searches of residences "unworkable when applied to [a] parolee . . . who was a mere passenger in [the] defendant's automobile." (*Schmitz, supra*, 55 Cal.4th at p. 919.) To begin with, in contrast to a residence, "[b]oth drivers and passengers have a reduced expectation of privacy in the interior of a car and its contents because cars ' "trave[l] public thoroughfares" [citation], "seldom serv[e] as . . . the repository of personal effects" [citation], are subjected to police stop and examination to enforce "pervasive" governmental controls "[a]s an everyday occurrence" [citation], and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny.' " (*Id.* at p.

11

920.) *Schmitz* reasoned a driver's already-diminished expectation of privacy is even "further diminished when he allows others to ride in his car, thus ceding some measure of privacy to them." (*Id.* at p. 924.)

The *Schmitz* court also found the probation-based consent analogy "inapt" because "previous cases have drawn a clear distinction between probation and parole with regard to consent. A probationer explicitly agrees to being placed on probation," whereas " 'parole is not a matter of choice.' " (*Schmitz, supra*, 55 Cal.4th at pp. 920-921.) Thus, while the scope of consent granted by a probationer is determined by the express terms of his or her probation conditions,[8] the scope of a nonconsensual "parole search flow[s] from the nexus between the parolee and the area or items searched. How we define that nexus depends on the totality of the circumstances, and takes into account such factors as the nature of that area or item, how close and accessible the area or item is to the parolee, the privacy interests at stake, and the government's interest in conducting the search." (*Schmitz*, at p. 923.)[9]

---

[8] A standard probation search condition—like the one imposed on defendant—requires the probationer to submit to warrantless, suspicionless searches of his "person, vehicle, residence, property, [and] personal effects." Craft's probation conditions are not in the appellate record.

[9] *Schmitz* observed that every inmate released on parole must receive an advisement that he or she " 'is subject to search or seizure by a . . . parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause.' " (*Schmitz, supra*, 55 Cal.4th at p. 923, quoting § 3067, subd. (b)(3); see Cal. Code Regs., tit. 15, § 2511, subd. (b)(4) [upon release, the parolee is notified that "[y]ou and your residence and any property under your control may be searched without a warrant at any time by any agent of the Department of Corrections [and Rehabilitation] or any law enforcement officer."].)

12

The *Schmitz* court then applied these principles to the context of a vehicle search. Considering the nature, proximity, and accessibility of the searched area to the parolee, the court observed that "a standard five-passenger automobile generally affords ready access to areas in both the front and the back seats." (*Schmitz, supra*, 55 Cal.4th at p. 925.) Recognizing that a parolee or probationer—"more than an ordinary passenger" (*ibid*.)—has "a heightened incentive to conceal or quickly dispose of incriminating evidence" (*ibid.*), the court observed that "an artificially narrow rule" that would limit a parole search to the front seat passenger's immediate seating area would allow a parolee to "frustrate a valid parole search simply by sitting in the front seat of the car and placing or discarding his belongings in the back" (*id.* at p. 926). The court explained that allowing searches of backseat areas accessible to front seat passengers would not offend "modern social conventions" (*id.* at p. 924) with regard to the driver's already-reduced expectation of privacy:

> "Typically, automobile occupants do not act as if they were confined in separate divided compartments, coats and other possessions piled on their laps, elbows clamped at their sides. A front seat passenger, even if only a casual acquaintance of the driver, will likely feel free to stow personal items in available space at his or her feet, in the door pocket, or in the backseat, until they are needed or the journey ends. Even if the driver's personal preferences are otherwise, it is not reasonable to expect that the passengers will always adhere to them. The driver is not necessarily in a position to supervise his passengers at every moment, nor is he in a position to control their every move once they are in the car. . . . [A]n occupant of an automobile may hide contraband without the other occupants' knowledge or permission." (*Schmitz, supra*, 55 Cal.4th at p. 925.)

In light of this practicality, the state's substantial interest in supervising parolees, and the driver's "reduced expectation of privacy with regard to an automobile" (*Schmitz,*

13

*supra*, 55 Cal.4th at p. 924), the court held "that a vehicle search based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies," but is "confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity" (*id.* at p. 926). The searchable area includes "items of personal property if the officer reasonably believes that the parolee owns the items or has the ability to exert control over them." (*Id.* at p. 930.)[10] The court clarified that "the officer need not articulate specific facts indicating that the parolee has *actually* placed property or contraband in a particular location in the passenger compartment before searching that area." (*Id.* at p. 926.)

Turning to the chips bag and pair of shoes, the *Schmitz* court upheld the searches. (*Schmitz, supra*, 55 Cal.4th at pp. 930-932.) The court expressed concern about searches of personal items when there are clear indicia of ownership by someone other than the parolee on whom the search is based. (*Id.* at p. 931, citing *People v. Baker* (2008) 164 Cal.App.4th 1152, 1160 [during a vehicle search based on the male driver's parolee status, it was unreasonable to search a "distinctly feminine purse" (*Baker*, at p. 1160) located at the feet of the female, nonparolee passenger]). But the court found that concern unwarranted on the record before it: the chips bag was "plainly distinguishable"

---

10     The court expressed no opinion on the reasonableness of a search of "closed-off areas" such as "the glove box, center console, or trunk . . . . The reasonableness of such a search must necessarily take into account all the attendant circumstances, including the driver's legitimate expectation of privacy in those closed compartments, the passenger's proximity to them, and whether they were locked or otherwise secured." (*Schmitz, supra*, 55 Cal.4th at p. 926, fn. 16.)

14

from something " 'inherently private' " like a purse (*id.* at p. 931); and, although "[t]he shoes present[ed] a much closer question" (*id.* at p. 932), the court upheld the search because the record was silent as to "the shoes' owner or whether the style of the shoes was gender specific" (*id.* at p. 932).

## B.  *Analysis*

We find *Schmitz* dispositive because the similarities between parolees and probationers in the context of vehicle searches are compelling.  First, defendant's expectation of privacy in his car was just as diminished as the *Schmitz* defendant's.  Both drivers were carrying passengers on public thoroughfares where they were subjected to potential police stops for myriad technical traffic violations or exposed to traffic accidents " 'that may render all their contents open to public scrutiny.' "  (*Schmitz, supra*, 55 Cal.4th at p. 920.)  *Schmitz* warned the public—including defendant, about two years before his arrest—that one's expectation of privacy in a vehicle is even further diminished if a passenger is a parolee.  We find it exceedingly unlikely that defendant (or other members of the public) construed *Schmitz* as applying only to passengers who are parolees but not to probationers.

Second, just as with parolees, the state has a substantial interest in monitoring probationers to prevent and detect recidivism.  "[I]t must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.' "  (*United States v. Knights* (2001) 534 U.S. 112, 120.)  "And probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal

15

because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration . . . ." (*Ibid*.) Indeed, *Schmitz* (a parole search case) cited *Knights* (a probation search case) to support this proposition. (*Schmitz, supra*, 55 Cal.4th at pp. 923-924.)

By extension, as with searches of parolees, an "artificially narrow rule" (*Schmitz, supra*, 55 Cal.4th at p. 926) restricting searches of probationers to their immediate seating area would allow probationers—who are as equally incentivized as parolees to conceal further criminal activity—to frustrate a valid probation search by placing contraband in the backseat or mere inches away in an adjacent center console.

Accordingly, we hold "that a vehicle search based on a passenger's [probation] status may extend beyond the [probationer]'s person and the seat he or she occupies," but is "confined to those areas of the passenger compartment where the officer reasonably expects that the [probationer] could have stowed personal belongings or discarded items when aware of police activity." (*Id.* at p. 926.) The searchable area includes "items of personal property if the officer reasonably believes that the [probationer] owns the items or has the ability to exert control over them." (*Id.* at p. 930.) Applying this standard, and considering the totality of these circumstances, we conclude it was objectively reasonable for Officer Larson to search those areas of defendant's car where Craft could have concealed contraband upon becoming aware of police activity.

We turn now to the specific areas Officer Larson searched. Defendant's primary argument on appeal is that it was unreasonable for Officer Larson to continue searching the toiletries bag and the plastic drawstring bag once he became aware they contained

16

male belongings and, thus, likely belonged to defendant and not to probationer Craft. (See, e.g., *Schmitz, supra*, 55 Cal.4th at p. 932.) We need not address this specific argument because we agree with the Attorney General that even if Officer Larson had not begun his search with those bags, he would inevitably have discovered the drugs contained in them. That is, Officer Larson was (as we will explain) entitled to search the center console; he undoubtedly would have done so regardless of whether he first discovered drugs in the backseat bags; he would have found the methamphetamine in the center console; and he then would have justifiably searched the rest of defendant's car and its contents, leading to his inevitable discovery of the drugs in the backseat bags.

"The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police.' " (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071; *Robles, supra*, 23 Cal.4th at p. 800.) "The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct." (*Robles*, at p. 800.) "Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. However, if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no

17

prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the State in a *worse* position than it would have occupied without any police misconduct." (*Nix v. Williams* (1984) 467 U.S. 431, 447.)

"The prosecution bears the burden of proving by a preponderance of the evidence that evidence otherwise unlawfully obtained would have been inevitably discovered." (*People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183, 1217 (*Walker*).)[11] "The showing must be based not on speculation but on 'demonstrated historical facts capable of ready verification or impeachment.' " (*Hughston, supra*, 168 Cal.App.4th at p. 1072.) However, in assessing whether evidence would inevitably have been discovered, "this 'court does not leave its common sense at the door.' " (*Walker*, at p. 1216.)

We are satisfied that Officer Larson would have found the drugs contained in the toiletries bag and the plastic drawstring bag even if he had not begun his search there. Under *Schmitz*, he was entitled to search those areas of defendant's car where Craft could reasonably have concealed contraband upon detecting police activity. *Schmitz* recognized that a passenger "will likely feel free to stow personal items in available space at his or her feet, in the door pocket, or in the backseat, until they are needed or the journey ends." (*Schmitz, supra*, 55 Cal.4th at p. 925.) We would extend this rationale to an unlocked center console, where, for example, a passenger would likely feel free to place his wallet or charge her cell phone using an adapter plugged into the car's cigarette

---

[11]    "The phrase 'inevitable discovery' is somewhat of a misnomer" inasmuch as the "doctrine does not require certainty. [Citation.] Rather, the People must show a 'reasonable probability that [the challenged evidence] would have been procured in any event by lawful means.' " (*Walker, supra*, 143 Cal.App.4th at p. 1215.)

lighter. Provided the center console was not locked, secured, or otherwise "closed[ ]off" (*id.* at p. 926, fn. 16), we conclude a search of such a center console based on a front seat passenger's probation search condition would be objectively reasonable. Nothing in the record suggests the center console of defendant's car was closed off, locked, or otherwise secured in any manner. Accordingly, Officer Larson was entitled to search the center console based on Craft's proximity to it, her apparent ability to conceal contraband in it upon learning of police activity, and her probation status.

Common sense tells us Officer Larson intended to search the interior of the car, including the center console. Upon learning Craft was a wanted felon who was subject to a valid "Fourth waiver" and had just provided the officers with a false identity, Officer Larson advised defendant he was "going to search *his vehicle*" (italics added), not just *two bags* in it. The fact that Officer Larson persisted in searching the vehicle over defendant's objection and request to speak to a sergeant satisfies us that Officer Larson would inevitably have searched the area most immediately accessible to the front seat passenger—the center console—and discovered the methamphetamine located there. Once Officer Larson found the methamphetamine in the center console, he would have been justified in searching the remainder of defendant's car and its contents. (See *People v. Dey* (2000) 84 Cal.App.4th 1318, 1322; *United States v. Ross* (1982) 456 U.S. 798, 821-824.) That would inevitably have led to the discovery of the drugs in the toiletries bag and the plastic drawstring bag.

Defendant contends the People forfeited their ability to invoke the inevitable discovery doctrine by failing to assert it below. The contention lacks merit. As noted,

19

the prosecutor's opposition to defendant's motion to dismiss and renewed suppression motion expressly raised the doctrine. This was sufficient to preserve the issue for appeal.

In sum, we conclude that although Officer Larson happened to have begun his search of defendant's car by searching the toiletries bag and plastic drawstring bag in the backseat, he inevitably would have also searched the center console, and been legally justified in doing so. The discovery of methamphetamine there would have justified the search of the backseat bags and led to the discovery of the drugs that led to defendant's guilty plea. Under these circumstances, the exclusionary rule's deterrent purpose is inapplicable. To the extent the rule is even implicated here at all, it is only by the happenstance of the sequence in which Officer Larson searched defendant's vehicle. This is not the kind of police conduct the exclusionary rule was intended to address. The trial court did not err in denying defendant's suppression motion.

## II. *Electronics Search Condition*

Defendant contends the electronics search condition is unreasonable and unconstitutionally overbroad.[12] We disagree.

### A. *Relevant Legal Principles*

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety . . . ." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) Under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), " '[a] condition of

---

[12] Defendant acknowledges he failed to object to this condition below. To eliminate the need to address defendant's claim of ineffective assistance of counsel, we exercise our discretion to consider the challenge despite its apparent forfeiture. (See *People v. Leon* (2016) 243 Cal.App.4th 1003, 1023.)

probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . " . . . .' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *Lent* at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, at p. 379.)

" 'A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as constitutionally overbroad.' [Citation.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' " (*People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346.)

We generally review the imposition of probation conditions for an abuse of discretion, and constitutional challenges to probation conditions de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723 (*Appleton*).)

Our court recently upheld the validity of an electronics search condition in *People v. Nachbar* (2016) 3 Cal.App.5th 1122 (*Nachbar*).[13]  There, we found that an electronics

_____

[13]     The California Supreme Court granted review in *Nachbar*, but deferred further action pending consideration and disposition of *In re Ricardo P.* (2015) 241 Cal.App.4th 676, review granted February 17, 2016, S230923.  However, whereas *In re Ricardo P.* concerns a juvenile offender and an electronics search condition justified under *Lent*'s

21

search condition imposed on a defendant convicted of unlawful sexual intercourse with a minor satisfied the first *Lent* prong because the defendant "communicated with his victim via social media, sent her sexually explicit text messages, and intended to watch a movie with her on a mobile device on the date of the offense."  (*Nachbar*, at p. 1130.)  We also found the search condition was not unconstitutionally overbroad.  We recognized the split of authority among California Courts of Appeal evaluating electronics search conditions in the wake of the United States Supreme Court's decision in *Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473, 2493] (*Riley*), which held that a warrantless search of a suspect's cell phone incident to arrest implicated and violated his Fourth Amendment rights.  (See *Nachbar*, at pp. 1128-1129, comparing *Appleton, supra*, 245 Cal.App.4th at pp. 724-729 [condition satisfied first *Lent* prong because defendant met victim via smartphone social media application, but was unconstitutionally overbroad in light of privacy concerns recognized in *Riley*] with *In re J.E.* (2016) 1 Cal.App.5th 795, 803-804 [finding *Riley* inapposite in the context of a probationer whose expectation of privacy is already diminished due to her criminal conviction].)  We found persuasive the reasoning that concluded *Riley* was inapposite:  "As a defendant who has pleaded guilty to a felony and accepted probation in lieu of additional punishment, defendant has a diminished expectation of privacy as compared to law-abiding citizens or those subject to searches incident to arrest.  Thus, we conclude the privacy concerns voiced in *Riley* are inapposite in the context of evaluating the reasonableness of a probation condition."  (*Nachbar*, at p.

third prong, *Nachbar* concerns an adult offender and an electronics search condition justified under *Lent*'s first prong.  (*Nachbar, supra*, 3 Cal.App.5th at p. 1130, fn. 5.)

22

1129.) We then found the electronics search condition was not unconstitutionally overbroad under the circumstances, which included the facts that (1) the defendant "reoffended with a younger victim within a matter of mere months, while already on probation"; (2) a psychological evaluation revealed the defendant was sexually attracted to adolescents; and (3) the probation officer assessed him has having "a moderate to high risk of reoffending if released on probation." (*Id.* at p. 1130.)

## B. *Analysis*

We conclude the electronics search condition is reasonable under the first and third *Lent* prongs. Defendant admitted he was being paid to transport drugs from Los Angeles to San Diego once or twice per month for approximately one year. Two days after his October 18 arrest for transporting drugs, and while he was out on bail, he was arrested again for committing the same crime. Although there is no direct evidence that defendant used electronic devices in the commission of the offenses for which he was convicted, there is strong circumstantial evidence of it in light of (1) the pervasive use of such technology in modern society; (2) the geographic distance involved; (3) the involvement of, and need to coordinate with, two other traffickers (Carlos in Los Angeles, and the dealer in San Diego); (4) defendant's admission of his frequent, but sporadic, trafficking activity; and (5) the fact two cell phones were recovered from defendant's car while he was transporting large quantities of drugs.[14] This evidence supports a strong inference that defendant used some form of electronic device to

---

[14] Although it is reasonable to infer that one phone belonged to each of defendant and Craft, that still leaves defendant with one cell phone.

coordinate with Carlos regarding the transportation of drugs on October 18 and 20. Thus, the electronics search condition satisfies *Lent*. (See *People v. Smith* (2017) 8 Cal.App.5th 977, 986 ["Since defendant used a cell phone to arrange the illegal drug transaction for which he was convicted in this case, it was imperative that his cell phone use be monitored by the probation officer to ensure that he was not violating his probation by engaging in drug trafficking."].)

Alternatively, even if defendant did not actually use an electronic communications device in connection with his October 18 and 20 criminal activities, the electronics search condition satisfies the third *Lent* prong (relation to future criminality) because it is likely defendant will use an electronic communications device or social media to coordinate with Carlos (or others) in Los Angeles if he engages in any future drug trafficking activities.

Having concluded the electronics search condition is reasonable under *Lent*, we also conclude it is suitably tailored in light of the substantial protective and rehabilitative concerns demonstrated by the record. We find our court's reasoning in *Nachbar* persuasive. "As a defendant who has pleaded guilty to a felony and accepted probation in lieu of additional punishment, defendant has a diminished expectation of privacy as compared to law-abiding citizens or those subject to searches incident to arrest." (*Nachbar, supra*, 3 Cal.App.5th at p. 1129.)

By contrast, the public has a substantial interest in monitoring defendant. He was caught transporting (among other drugs) more than 3,600 doses of methamphetamine with a street value between $111,000 and $222,000. The probation officer opined this

"would potentially have had a significant impact on the community if [defendant] had completed his mission."[15]  Defendant admitted to a prolonged and extensive history of trafficking activity.  Indeed, despite his October 18 arrest and release on bail, he was arrested a mere two days later transporting 342 dosage units of methamphetamine with an estimated street value between approximately $10,000 and $20,000.  (See, e.g., *Nachbar, supra*, 3 Cal.App.5th at p. 1130 ["Defendant reoffended . . . within a matter of mere months, while already on probation."].)  Given the pervasiveness of electronic communications devices in modern society, and the unquestionable reality that defendant was using them to communicate with Carlos to coordinate drug trafficking,[16] we conclude the electronics search condition is suitably tailored under the circumstances.

---

[15]   Defendant asserts "he isn't a [dangerous] gang member" like the defendant in *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1175, which upheld an electronics search condition where the defendant was "a criminal street gang member who promote[d] his gang on social media, ma[de] violent threats in person to armed police officers, and physically resist[ed] armed police officers."  True, but given the quantities of drugs defendant was transporting, he nonetheless poses a significant threat to public safety.

[16]   Defendant's failure to object below to the electronics search condition prevented the development of a more comprehensive record regarding his use of electronic communications devices or social media in connection with his criminal activities.

DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.