Filed 8/23/23  P. v. Viramontes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079992 |
| v. | (Super.Ct.No. RIF2202333) |
| JASON VIRAMONTES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy J. Hollenhorst, Charles Rogers, and Dwight W. Moore, Judges.* Reversed and remanded with directions.

Charles Thomas Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\*        Judge Hollenhorst denied the motion to suppress at the preliminary hearing. Judge Rogers denied the renewed motion to suppress at the special hearing.  Judge Moore pronounced sentence.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Eric A. Swenson and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

A police officer stopped the car that defendant Jason Viramontes was driving because it had illegally tinted windows. The officer then conducted a pat-down search of defendant. He found over 43 grams of methamphetamine. Next, assertedly with defendant's consent, the officer and his partner searched the car. They found 3.5 grams of methamphetamine and two handguns.

At the preliminary hearing, the magistrate upheld both searches. The trial court, however, ruled that the pat-down search was unconstitutional, because there were no specific and articulable facts suggesting that defendant was armed and dangerous. Nevertheless, it upheld the search of the car, because defendant had claimed that he was "Eric Viramontes," and the police had learned that Eric Viramontes was on probation.

In this appeal, the People do not argue that either of the searches was valid. Instead, they argue that all of the contraband was admissible under the inevitable discovery doctrine. As the police learned after the searches, there was a warrant for defendant's arrest. In the People's view, it was inevitable that the police would demand defendant's driver's license, would learn that he was Jason Viramontes, would arrest him on the warrant, and would search both him and the car.

The People cannot show the requisite likelihood that the police would have obtained defendant's driver's license. The police did not, in fact, demand it (except

2

belatedly, when he was being transported).  Instead, they asked for his name; he gave the name of Eric, his brother; they did a records check, which produced a photo of Eric; and defendant looked so much like Eric that they did not notice that it was not a photo of him.  Thus, it appears that, but for the unconstitutional searches, defendant could have passed as Eric and thus could have evaded arrest.

Defendant also contends that the trial court erred by imposing fines and fees without an ability-to-pay hearing.  As we are reversing on other grounds, we do not reach this issue.

I

STATEMENT OF FACTS

The evidence at the preliminary hearing included the testimony of the arresting officer, a video from his bodycam, and a video from his dashcam.  No additional evidence was introduced at the special hearing in the trial court.

On the night of January 5, 2020, a police officer, who was on patrol with his partner, turned on his overhead lights to conduct a traffic stop of the car that defendant was driving.  The officer testified that he did so because defendant's front side windows were tinted, which is illegal.  (Veh. Code, § 26708, subd. (a).)[1]

Defendant's car moved over slowly toward the curb but did not stop.  It made a right turn from Tyler onto Hemet, another right turn into the parking lot of a Burger King,

---

[1]        However, when defendant asked why the officer had pulled him over, the officer said, "You don't have license plates."  Actually, the car had paper plates.

3

and a third right turn, as if "loop[ing]" back to Tyler.  However, it stopped just short of Tyler, under a light.  The partner, using a PA system, ordered defendant to turn off his car.

Tyler was a no-parking zone.  However, there were parking spaces on Hemet.

As the officers walked toward his car, defendant opened his door, leaned out, held out both hands — one empty, and one holding the key[2] — and looked back at them.  According to the officer, this made him "uncomfortable," because "it's unusual for someone to open their door . . . and have their body be outside the vehicle already."  In his experience (including over 500 traffic stops), this usually meant the driver was going to flee.

Defendant said the car belonged to a friend.  He denied being on parole or probation.

The officer ordered defendant out of the car and immediately conducted a pat-down search, which he testified was for officers' safety purposes.  In defendant's right front pocket, he felt a bulge.  He said, "What's in your pocket right here?"  "Mind if I check?"  Defendant said, "No problem."  He removed the object.  It was a baggie with over 43 grams of methamphetamine.

---

[2]    The officer testified that he was "uncomfortable" because he could not see the hand that was not holding the key.  In his report, however, he had said that defendant "was showing me both of his hands."  The video confirms that both of defendant's hands were visible.

4

The officer then handcuffed defendant and had him sit on a curb.  There was this exchange:

"[Officer]:  It's not your vehicle?

"[Defendant]:  It's — no, it's not.

"[Partner]:  Mind if we check, right?

"[Defendant]:  . . .  Well, I — I mean, I'm not giving you permission, but if you guys wanna go you guys can check, yeah.

"[Officer]:  All right, well, we gotta look for more stuff.

"[Defendant]:  No problem."

The officers then searched the car.  They found a baggie with 3.5 grams of methamphetamine somewhere in the back.  They found one handgun under the passenger seat  and a second handgun in a black backpack in the back seat.

Defendant gave his name as Eric Viramontes and gave a date of birth.  The officer rifled through defendant's wallet, as if looking for a driver's license; the video shows various cards, but no driver's license.

A records check showed that Eric Viramontes, with that date of birth, was on probation and sometimes went by the name Bryan Viramontes.  It also produced a photo of Eric Viramontes.  The officer did not appear to notice that the photo was not a photo of defendant.  Defendant said that Bryan was his twin brother and sometimes used his name.

While being transported, however, defendant spontaneously admitted his true name and true date of birth.  He said Eric and Bryan were twins, and he was their

5

younger brother. The officer remarked that defendant "look[ed] just like" Eric. Defendant pointed out that his brother had "colored eyes," but he did not; the officer said, "You don't?" (implying that he had not noticed the discrepancy).

At the officer's request, defendant provided his driver's license number. A new records check turned up the fact that he was on postrelease community supervision (PRCS) and had a felony arrest warrant.

## II

## STATEMENT OF THE CASE

Defendant was charged by complaint with:

Count 1: Possession of a controlled substance while armed with a loaded and operable firearm. (Health & Saf. Code, § 11370.1, subd. (a).)

Counts 2 & 3: Unlawful possession of a firearm. (Pen. Code, § 29800, subd. (a)(1).)

Count 4: Possession of methamphetamine for sale (Health & Saf. Code, § 11378), with an enhancement for being personally armed with a firearm (Pen. Code, § 12022, subd. (c)).

Count 5: Transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), with an enhancement for being personally armed with a firearm (Pen. Code, § 12022, subd. (c)).

Count 6: Carrying a loaded firearm in a vehicle, after a prior felony conviction. (Pen. Code, § 25850, subds. (a), (c)(1).)

The complaint also alleged two strike priors (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and one prior serious felony conviction enhancement (Pen. Code, § 667, subd. (a)).

Defendant filed a motion to suppress. (Pen. Code, § 1538.5.) At the end of the preliminary hearing, the magistrate denied the motion and held defendant to answer on all charges.

The prosecution filed an information with the same charges. Defendant renewed his motion to suppress as part of a motion to set aside the information. (§ 995.) The trial court granted the motion with respect to the drugs found on defendant's person and set aside all counts based on those drugs; otherwise, it denied the motion.

The prosecution filed an amended information, eliminating counts 4 and 5 and renumbering count 6 as count 4; it also eliminated the prior serious felony allegation. Defendant pleaded no contest and admitted the strike priors. He was sentenced to a total of two years in prison.

III

THE RULINGS BELOW

A.    *The Magistrate's Ruling*.

The magistrate ruled that the traffic stop was valid because defendant had illegally tinted windows.

The pat-down was valid because "on the totality of the circumstances, an officer could believe his safety was in danger." "[I]t is quite unusual for suspects to get out of a

vehicle during a traffic stop. . . . [T]he [car] did not stop immediately. A PA system . . . had to be used to direct the [car] to stop.[3] Once the vehicle did stop, the car door opened, an individual was seen with keys in a hand, and [the officer] believed, again based on his experience, that the suspect would run."

Defendant consented to the search of the car. "He initially said he did not give permission and then he gave permission." The magistrate also noted that defendant was subject to search terms: "Had officers known [defendant's] true identity . . . , they would have a full right to search that entire vehicle." "Additionally, [defendant] said that the vehicle was not his. So . . . there was no right to privacy in that vehicle."

B.    *The Trial Court's Ruling.*

The trial court ruled that the traffic stop was valid because defendant had illegally tinted windows.

However, the pat-down search was invalid because there were no specific and articulable facts suggesting that defendant was armed and dangerous. Although he could have stopped sooner, he was not evasive or uncooperative. There were "two officers and one suspect." "[I]mmediately upon approaching the officers tell the defendant to get out of the car. He gets out of the car and within three seconds he's up against the car being patted down. . . . Total time for the officer approaching and having him up against the

---

**3**     Actually, the evidence showed that the car had already stopped before the police used the PA system to order defendant to turn the car off.

8

car is . . . less than five seconds." "I get the very clear sense that this officer was going to search him come hell or high water."

Defendant did not consent to the search of the car. "He was in fact saying 'no, but if you're going to do it any way [*sic*], I can't stop you. Go ahead.' That's how this Court understands his statement." The search of the car, however, was valid because the police believed defendant was Eric Viramontes, who was on probation.

IV

DISCUSSION

A.    *General Legal Background*.

"A search without a warrant is unreasonable under the Fourth Amendment, unless it fits in one of a few narrow exceptions allowing for warrantless searches. [Citation.]" (*People v. Vargas* (2020) 9 Cal.5th 793, 814.)

"Under section 1538.5, subdivision (i), where a defendant unsuccessfully moves to suppress at the preliminary hearing, the motion may be renewed at a special hearing in the superior court. At such a special hearing, and where, as here, the evidence is limited to the preliminary hearing transcript, the superior court is 'bound by the factual findings of the magistrate and, in effect, becomes a reviewing court drawing all inferences in favor of the magistrate's findings, where they are supported by substantial evidence.' [Citations.]

"On appeal, we do not review the findings of the superior court since it acts as a reviewing, and not a fact-finding court. Rather, 'the appellate court disregards the

9

findings of the trial court and reviews the determination of the magistrate who ruled on the motion to suppress.' [Citation.] In doing so, 'all presumptions are drawn in favor of the factual determinations of the [magistrate] and the appellate court must uphold the [magistrate's] expressed or implied findings if they are supported by substantial evidence.' [Citations.]" (*People v. Snead* (1991) 1 Cal.App.4th 380, 383–384, fn. omitted.)

"'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' [Citation.]" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

B.      *The Traffic Stop.*

Defendant no longer contends that the traffic stop was invalid.

C.      *The Pat-Down Search.*

Defendant does contend that the pat-down search was unconstitutional. We agree (meaning we agree with the trial court and disagree with the magistrate). A pat-down search is authorized only if there are "specific and articulable facts" indicating that the subject is "armed and dangerous." (*Terry v. Ohio* (1968) 392 U.S. 1, 20–27.) The facts here showed, at most, that defendant might flee. They did not show that he was armed or that he might attack the officers. Accordingly, the trial court properly suppressed the 43 grams of methamphetamine found on defendant's person.

D.      *The Search of the Car.*

We turn to the validity of the search of the car.

1.     *Reasonable expectation of privacy.*

The magistrate erred by ruling that defendant could not object to the search because he had admitted that he did not own the car. "A person . . . who has the owner's permission to use a vehicle and is exercising control over it has a legitimate expectation of privacy in it." (*People v. Leonard* (1987) 197 Cal.App.3d 235, 239.) To defeat this expectation, there must be evidence that the defendant is not in legitimate possession; a mere denial of ownership is not enough. (*People v. Casares* (2016) 62 Cal.4th 808, 835–836, disapproved on unrelated grounds in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)

2.     *Consent.*

We need not decide whether defendant consented to the search of the car. Even if he did, his consent was the product of the illegal pat-down search and the resulting arrest.

"'"'When the People seek to justify a search on the ground that consent was given, they have the burden of proving . . . that the consent was lawful, was not a mere submission to authority, and was not inextricably bound up with unlawful conduct." [Citation.]' [Citation.] As a general matter, 'consent to search given "immediately following an illegal entry or search" is invalid because it "is inseparable from the unlawful conduct."' [Citation.] And it is likewise generally true that consent given following an illegal detention is inadmissible. [Citations.] 'Where an illegal detention occurs, unless "subsequent events adequately dispel the coercive taint of the initial illegality, i.e., where there is no longer causality, the subsequent consent is" ineffective. [Citations.]' [Citation.]" (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1211–1212.)

Here, the pat-down search was followed immediately by the arrest, which was followed immediately by the asserted consent. There were no intervening events that could disprove causality.

### 3. *Probation or PRCS search.*

The search of the car cannot be justified as a probation or PRCS search. Defendant gave his name and birth date as those of Eric Viramontes, but the police did not learn that Eric Viramontes was on probation until *after* they had searched the car. "[A]n otherwise unlawful search . . . may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted." (*People v. Sanders* (2003) 31 Cal.4th 318, 335.) Moreover, the police did not specifically know that Eric Viramontes had a search condition. They knew only that he was on probation, which does not necessarily carry a search condition; therefore, it is insufficient to support a warrantless search. (*People v. Rosas* (2020) 50 Cal.App.5th 17, 24–25.) Finally, while defendant himself was on PRCS, which automatically carries a search condition (Pen. Code, § 3465; *People v. Douglas* (2015) 240 Cal.App.4th 855, 864), the police did not learn that, either, until after the search.

### 4. *Estoppel by wrongdoing.*

The fact that defendant gave a false name does not estop him from claiming the search was invalid. When a suspect gives a false name, and when that prevents the police from discovering the suspect's search condition, the defendant's wrongdoing raises an

12

estoppel.  (*People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408–1410.)  However, "that estoppel is triggered when an officer *receives the results* from a record check based on a false name."  (*People v. Mathews* (2018) 21 Cal.App.5th 130, 140.)  The search here happened before the officers received the results of the record check.  In fact, it happened before defendant even gave a false name.

E.      *Inevitable Discovery*.

So far, the People do not dispute any of this.  Instead, they put all their chips on inevitable discovery.

"'Under the inevitable discovery doctrine, illegally seized evidence may be used where it would have been discovered by the police through lawful means . . . .  The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct.' [Citations.]"  (*People v. Fayed* (2020) 9 Cal.5th 147, 183–184.)  "The inevitable discovery exception requires the court "'to determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred.'"  [Citation.]"  (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.)  The prosecution "must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, the [evidence] would have been discovered by lawful means."  (*Ibid.*)

"'The phrase "inevitable discovery" is somewhat of a misnomer' inasmuch as the 'doctrine does not require certainty.  [Citation.]  Rather, the People must show a

"reasonable probability that [the challenged evidence] would have been procured in any event by lawful means."' [Citation.]" (*People v. Cervantes* (2017) 11 Cal.App.5th 860, 872, fn. 11.) "'The showing must be based not on speculation but on "demonstrated historical facts capable of ready verification or impeachment."' [Citation.]" (*Id.* at p. 872.)

The prosecution did not raise inevitable discovery below. Nevertheless, the People may raise inevitable discovery for the first time on appeal, if "[t]he factual basis for the theory is fully set forth in the record, and it does not appear that any further evidence could have been introduced." (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138.) Defendant contends that, because the prosecution did not raise inevitable discovery below, the factual record is inadequate. We need not consider this contention, because the record, even as it stands, falls short of proving inevitable discovery.

The People's position is that, in any traffic stop, the police can and do ask for the driver's license. Once defendant produced his license, it would have shown that he was Jason Viramontes. Once the police ran a records check on Jason Viramontes, they would have learned that he had an arrest warrant. And once they learned he had an arrest warrant, they would have arrested him and conducted a search incident to arrest.

Defendant argues that, even if he had been arrested, the police would not have been authorized to conduct a search incident to arrest. (See *Arizona v. Gant* (2009) 556 U.S. 332, 343.) Even though he raised this argument in his opening brief, the People have not responded to it.

14

Even if defendant is correct, it could also be argued that, once he was arrested, the police would inevitably have impounded the car and conducted an inventory search. The video shows the car being towed away.

And it could also be argued that, once he was arrested, the police would have learned that he was on PRCS. As mentioned, PRCS automatically carries a search condition. And, as the trial court noted, the officer was determined to conduct a pat-down search "come hell or high water." Presumably, then, once he knew defendant was on PRCS, he would have searched the car.

We need not decide whether defendant's arrest would inevitably have led to a search of the car, because we agree with defendant that his arrest was not inevitable.

Ordinarily, in a traffic stop, the first thing the officer does is ask the driver to produce a license and registration. Here, however, we know for a fact that this was *not* the first thing the officer did. Instead, he conducted the pat-down search. He looked through defendant's wallet but did not find a license. Thus, he asked defendant his name and date of birth. Defendant identified himself as his brother, Eric. Then, the officer conducted a records check on Eric. It produced a photo of Eric that "look[ed] just like" defendant. The officer did not notice any discrepancy.

Thus, the record does not show a reasonable probability that, in the absence of a search, the officer would have asked for a driver's license. Moreover, it indicates that defendant did not have his license with him. Presumably, then, the officer would still have asked defendant his name; defendant would still have said Eric; the officer would

15

still have conducted a records check on Eric; and the officer would still have gotten a photo that looked just like defendant.  To his mind, the records check would have proven that defendant was Eric and that Eric had a driver's license.  He would have written defendant a citation for not having the license in his possession (Veh. Code, § 12951) — and for having tinted windows — and would have let him go.

V

DISPOSITION

The judgment is reversed.  On remand, the trial court must allow defendant to withdraw his nolo contendere plea and must grant his motion to suppress.  (See *People v. Ovieda* (2019) 7 Cal.5th 1034, 1053.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

FIELDS
J.

MENETREZ
J.

16